IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT COURT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| **MARCI GREENWOOD Individually and as Co-Administratrix of the Estate of Terry Paul Greenwood, KOURTNEY GREENWOOD Individually and as Co-Administratrix of the Estate of Terry Paul Greenwood,**<br><br>Plaintiffs,<br><br>vs.<br><br>**CANDO RAIL & TERMINALS, INC. f/k/a CANDO RAIL SERVICES LTD., and GEORGIA-PACIFIC CONSUMER OPERATIONS LLC,**<br><br>Defendants. | Case No. 1:22-cv-01024-SOH<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION OF CANDO RAIL & TERMINALS, INC.'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

As an initial point, because Greenwood's Motion for Remand (Doc. 16) should be granted, this Court has no need to entertain Cando's motion and it should be denied as moot.[1] Further, Cando's motion is wildly premature, as absolutely no discovery has been completed yet. Finally, even without the aid of discovery, there already exists ample evidence that makes clear there are factual disputes that cannot be resolved by summary judgment.

This Court should view Cando's motion for what it is, which is a clear attempt to avoid

---

[1] Because Cando's summary judgment arguments merely rehash the arguments it made in response to Greenwood's Motion for Remand, Greenwood fully incorporates the briefing and exhibits submitted there (Doc. Nos. 16, 24) into this response, by reference. And, because that briefing and exhibits are nearly identical, Greenwood does not rehash them here, but rather summarizes

1

the stringent standard and burden it faces in overcoming Greenwood's motion for remand. Although the standard for summary judgment constitutes a heavy burden, it is still less stringent than that for a motion for remand, wherein Defendants must prove that Greenwood's allegations are fraudulent. This Court should view Cando's motion for what it is, which is a clear attempt to avoid the stringent standard and burden it faces in overcoming Greenwood's motion for remand. *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (defendant must show that claim is "baseless in law and in fact and 'serves only to frustrate federal jurisdiction'").

Regardless, Cando's motion is premature at the pleadings stage, where no opportunity for discovery has occurred. Cando's summary judgment motion amounts to a thinly veiled Rule 12 motion, which was waived when Cando untimely filed its Answer in state court. Moreover, even without the benefit of discovery, Greenwood has put forth ample facts that would—if not conclusively support Greenwood's allegations—at a minimum create a factual dispute. In fact, under less compelling circumstances, this Court previously granted a remand for a FELA incident that occurred at this exact location. *Burnside v. Railserve Inc.*, 2012 WL 5287979 (W.D. Ark. Oct. 23, 2012). After that remand—and after full discovery—the state court also denied summary judgment. *Burnside v. Railserve, Inc.*, CV-2012-32-3 (Ark. Cir. Ct. Sept. 19, 2014). Another Arkansas state court—under similar, but less compelling circumstances and after full discovery—also rejected the same arguments Cando makes here concerning common carrier status.

Finally, as noted in the Remand briefing, (Doc. 16), courts across the country have rejected Cando's argument that acceptance of workers' compensations payments effectively bars a Federal Employment Labor Act (FELA) claim. That includes this Court and the state court in *Burnside*, as well as the recent state court decision in *Hoots*, wherein the same arguments were

2

made. Uniformly, courts have stated that FELA preempts state workers' compensation systems and that railroad carriers cannot insure or contract themselves out of FELA's purview. If Cando wishes to dispute black-letter law concerning the application of FELA, the relief it seeks is with Congress not this Court.

## LEGAL ARGUMENT

### I. Summary Judgment Is Inappropriate At The Pleadings Stage

Summary judgment is a blunt instrument that should not be wielded unless the moving party establishes a complete absence of any genuine factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Accordingly, the evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in their favor. *Id*. at 255. Since Greenwood's claims arise under the FELA, summary judgment is particularly inappropriate because FELA is a remedial federal safety statute that "was designed for the benefit and protection of railroad employees" that must be "liberally construed" in his favor. *Sowards v. Chesapeake & O. Ry. Co.*, 580 F.2d 713, 714 (4th Cir. 1978).

At this early stage, no discovery has been completed.[2] Rule 56(d) specifies that if the non-movant has not had the opportunity to discovery and obtain full facts to dispute a motion—and has a good cause for doing so—the motion should be denied. Fed. R. Civ. P. 56(d). Here, there is good cause because there has been no discovery whatsoever completed.

### II. Arkansas Workers' Compensation Regime Is Preempted By The Fela.

It is well established that in enacting FELA, Congress intended to supersede state law remedies and provided railroad employees with their exclusive remedy for compensation. *South Buffalo R. Co. v. Ahern*, 344 U.S. 367, 371 (1953); *New York Central R. Co. v. Winfield*, 244

---

[2] Cando was served with discovery in the state court action but failed to respond.

U.S. 147 (1917).

Cando's argument that the Arkansas' Workers' Compensation and the doctrine of election of remedies bars Greenwood's claims is without merit because Arkansas statutes, like the statutes of other states, is preempted by federal statutes. This issue was addressed by the Circuit Court of Crittenden County Arkansas in *Hoots v. H&M Intern'l Transp. Inc.*, 18CV-2016-499 (Ark. Cir. Ct. Jan. 29, 2019) (Doc. 24-2). In *Hoots*, H&M argued that the "Arkansas Workers' Compensation Commission has "exclusive, original jurisdiction" over an injured employee's claims. The state court rejected that argument concluding that "FELA would preempt state workers' compensation law because of the liberal interpretation [and] the congressional intent in passing that law." (Doc. No. 24-2 at 7, *Hoots* Tr. at 44.)

Similarly, the state court in *Burnside*, after the Western District of Arkansas remanded the matter, denied Cando's predecessor's motion for summary judgment on the same issue. In that case, Railserve, Inc., argued that because an employee had received workers' compensation benefits, he was no longer eligible to recover under the FELA. The court rejected that argument concluding that Railserve paid "for liability insurance overage for its potential liability under FELA – <u>in addition to paying for workers compensation.</u>" *Burnside v. Railserve, Inc.*, CV-2012-32-3 (Ark. Cir. Ct. Sept. 19, 2014).

In this case, Greenwood is unable to say whether Cando pays for both FELA and workers' compensation insurance because no discovery has been done on the issue. Regardless, Greenwood's receipt of workers' compensation benefits does not preclude his FELA claim because the FELA is his exclusive remedy, which preempts Arkansas law.

The FELA preempts state law through application of the U.S. Constitution's Supremacy Clause. U.S. Const. Art. I, § 8; *Parden v. Terminal R. Co.*, 377 U.S. 184, 192-93 (1964)

(overruled on other grounds). Preemption can occur in three ways: (1) express preemption; (2) conflict preemption; or (3) field preemption. *Kurns v. Railroad Friction Products Corp.*, 565 U.S. 625, 630-31. Since the FELA does not contain any express preemption provision, field and conflict provision are most often at issue in FELA cases. *Id.* Both apply here.

### A. Conflict Preemption Applies

Arkansas Workers' Compensation system conflicts with the FELA. State law is "naturally preempted to the extent of *any* conflict with a federal statute." *Kurns*, 565 U.S. at 630 (emphasis added). There is no doubt that the FELA conflicts with Arkansas Workers' Compensation regime in several areas. Perhaps most substantively, the two remedies conflict because Arkansas workers' compensation law does not afford the right to a jury trial. *Craven v. Fulton Sanitation Service, Inc.,* 206 S.W.3d 842, 847 ("Workers' compensation hearings are not bound by common law or statutory rules of evidence . . . there is no right to a jury trial on a workers' compensation claim."); *Rivera v. Union Pacific R. Co.*, 378 F.3d 502, 506 (5th Cir. 2004) ("the FELA is protective of a plaintiff's right to a jury trial.").

Because FELA is a federal law, it is fundamental that, under the Constitution's Supremacy Clause, FELA supersedes state workers' compensation laws. *See* U.S. Const. art VI, cl. 2; *N.Y. Cent. R.R. Co.Winfield,* 244 U.S. 147, 153 (1917) (FELA precludes awards under state workers' compensation laws because "no State is at liberty . . . to interfere with the operation of a law of Congress"); *St. Louis, Iron Mt. & S..Hesterly*, 228 U.S. 702, 704-05 (1913) (same); *Mo., Kan. & Tex. Ry. Co.Wulf,* 226 U.S. 570, 576 (1913) (same); *see also Hopkins v. City of Brinkley*, 139 432 S.W.3d 609, 613 (Ark. 2014) ("The Supremacy Clause of the United States Constitution provides that state laws that interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution are invalid." (citation omitted)); *Nordgren v. Burlington N. R.R.*

5

*Co.*, 101 F.3d 1246, 1250 (8th Cir. 1996) ("It is settled law that FELA preempts state-law personal injury claims[.]").

In fact, the Arkansas Workers' Compensation Act, instructively states that "nothing in this chapter shall be construed to conflict with any valid act of Congress governing the liability of employers for injuries received by their employees." Ark. Stat. § 11-9-103(a). FELA is such an act of Congress.

### B. Field Preemption Applies

Many courts have decided this exact issue—a railroad entity arguing that receipt of workers' compensation payments precludes a FELA claim—and all have held that FELA claims are not—and cannot—be barred by a state workers compensation system because the FELA preempts this field. In *Nichols v. Pabtex*, a worker for a railroad entity was injured and began receiving workers' compensation benefits, which defendant then argued barred a FELA claim. 151 F. Supp. 2d 772, 785 (E.D. Tex. 2001). Considering this issue on summary judgment, the court held that a state workers' compensation statute "does not bar recovery from any of the defendants under the FELA. The FELA preempts state law and provides the exclusive remedy for injury to or death of employees of common carriers by rail engaged in interstate commerce." *Id.* (citing *Rogers v. Consolidated Rail Corp.*, 948 F.2d 858, 860 (2d Cir. 1991) ("It is now well-settled that Congress explicitly directed that FELA wholly preempt state-law remedies for railway employees injured in the course of employment when any part of that employment furthers interstate commerce."); *see also, Luman v. ITS Technologies*, 323 S.W.3d 821, 824 (Mo. App. 2010) (receiving state workers compensation payments does not preclude FELA claim because FELA preempts state statutes); *Swan v. New Orleans Terminal Co.*, 745 So. 2d 52, 55 (La. Ct. App. 1999) (same).

> To determine FELA's scope, we look to its purposes, background, and the construction given to it by the U.S. Supreme Court. Prior to FELA's enactment in 1908, a railroad employee's recourse for the negligence of a fellow employee was significantly limited by common law doctrines and contractual employment agreements. In FELA, Congress sought to shift the burden of railroading's physical hazards from employees to their employers by limiting the applicability of these doctrines and barring employers from exempting themselves from liability through contract. Thus, "[u]nder FELA, railroads engaging in interstate commerce are liable in damages to their employees who suffer injury or death in the course of their employment as a result in whole or in part of the negligence of any of the railroad's officers, agents, or employees." FELA further preempts an injured railroad employee's state-law personal injury claims, creating a "uniform federal law of liability

*Luman,* 323 S.W.3d at 824 (citations omitted).[3]

Tellingly, although Cando's primary argument is that Arkansas workers' compensation bars Greenwood's FELA claim, not a single case it cites says as much. That is because it cannot find such a case. Rather, the cases relied upon stand for the irrelevant proposition that Arkansas' workers' compensation statute precludes state-based, non-FELA claims against Cando. Greenwood is not making any such claims.

For example, Cando relies heavily upon *Guerrero v. Ok Foods* and *Gourley v. Crossett Public Schools*, both of which concern a potential intentional-tort exception to Arkansas' workers compensation statute. Neither case involved a federal statute or FELA. Both are inapposite to whether the Arkansas legislature has the power to enact legislation that can preclude or bar FELA or any other federal statute. The Arkansas legislature does not have that

---

[3] *Luman* also considered the question of whether ITS was a common carrier for purposes of FELA. The trial court concluded that workers compensation did not preclude the FELA claim, but that ITS was not a common carrier. The Missouri Court of Appeals reversed, rejecting the trial court's reliance on the same cases that Cando cites to in its response here, noting that these "in plant" cases were examples of an entity moving its own products within its own facility. *Luman* held that ITS was a common carrier because—like here—ITS was moving and receiving outbound and incoming railcars and moving on the tracks of another common carrier. *Id.*

authority and recognizes as much by stating "nothing in this chapter shall be construed to conflict with any valid act of Congress governing the liability of employers for injuries received by their employees." Ark. Stat. § 11-9-103(a).

If Cando wishes to change settled law concerning this issue, it must seek redress from Congress, not this Court.

### III. There Is Substantial Evidence That Cando Is A Common Carrier

#### A. Even Without Discovery, There Is Substantial Evidence—Which Are Supported By A Previous Decision Involving This Same Location—That Cando Is A Common Carrier

Cando's own documents show that it holds itself out to the public as a common carrier (¶¶ 1-2 Plaintiffs' Factual Statement)  Further, Cando made federal filings that are only required for railroad entities that are engaged as a common carrier in interstate commerce.  Its agreement with Georgia Pacific, statements of Greenwood's coworker, and its own documents show that Cando operates on the tracks and mainline of another common carrier railroad (ALM) and over public roadways, which also requires FRA certifications that are only necessary for railroad workers working in interstate commerce.  The facts are fully laid out in Greenwood's Remand Motion briefing (Doc. 16) which is incorporated herein by reference, but those facts and Cando's response were summarized in Plaintiffs' Reply (Doc. 26 at 9-10) as follows:

| **Cando Common Carrier Facts** | **Cando Response** |
|---|---|
| Cando employees, such as decedent, operate on the tracks and in the yard of another common carrier—ALM—in Crossett and cross public roadways | Cando never addresses, except to produce a map that confirms that Cando operates on the tracks and mainline of another carrier and crosses public roadways |
| Because Cando crosses public roadways and operates on the tracks of another common carrier, employees are required to hold FRA certifications specific to railroad activity that furthers interstate commerce | Cando never addresses, except to oddly point out that FRA certification is not required for purely in-plant operations |
| Cando made multiple filings with the STB that are only | Cando attempts to explain by |

| | |
|---|---|
| required for railroad common carriers engaged in interstate commerce, for its operations in Crossett | saying it doesn't own a railroad line it just acquired rights to operate one |
| Cando made multiple STB filings concerning railroad equipment that only need be filed if it is used in interstate commerce | Cando never addresses |
| Cando is a uniformly organized entity that—unlike some contractors that are organized and managed locally—has railroad operations across the United States and Canada | Cando never addresses, other than to produce a single page of one of its local operating manuals. |
| Cando promotes itself as being a critical part of the general railroad transportation system and being intricately embedded in that network, including through its own operations, its own common carrier shortline railroads, and by connecting customer's interstate and international freight to this system through its own tracks, track rights, and agreements with other common carriers | Cando never addresses |
| Cando has uniform operating and training manuals that are shared throughout its North American operations | Cando never addresses, except to produce a single page of a local manual |
| Cando shares employees across states lines, including the decedent | Cando never addresses |
| Like in *Hoots*, Cando was required to provide its own locomotives, obtain railroad liability insurance, had right to terminate the agreement and control employees and safety, and operated locomotives and moved railcars on the tracks of another common carrier | Cando never addresses |
| This Court and the state court already decided this issue in *Burnside*, at this same location | Cando never addresses |

In summary, even without any discovery, there is already substantial—if not conclusive—evidence of Cando's status as a common carrier. This Court and an Arkansas state court (after discovery) have already decided this issue at this exact location. Another Arkansas state court (after discovery) recently made the same decision. Moreover, neither of the entities in *Burnside* or *Hoots* had made filings with the STB (among other facts) that are only required by common carriers operating in interstate commerce. At a minimum, there is a factual dispute that needs to be resolved by a jury, especially at the pleadings stage.

9

### B. Cando Relies On Irrelevant Case Law And Ignores The Facts Of This Case

Cando also misinterprets and misapplies decisions discussing "in-plant" rail operations. In its motion, Cando relies exclusively on non-binding decision of the Eleventh Circuit in *Willard v. Fairfield Southern Co.*, 472 F.3d 817 (11th Cir. 2006). In doing so, Cando disregards the Western District of Arkansas' decision in *Burnside* that the operations performed at the Crossett County facility give rise to common carrier status. *Burnside v. Railserve, Inc.*, 1:12-CV-010205-SOH (W.D. Ark. Oct. 23, 2012).

In *Burnside,* the Court granted plaintiff's motion for remand because the defendant's status as a common carrier was "a fairly doubtful question" upon which reasonable minds could differ. *Id*. at 5. While Railserve argued that its operations were "only in-plant switching operations" and that it did not transport cargo for Georgia Pacific or any other railroad, the court adopted plaintiff's reasoning that Railserve "employs many workers qualified for railroad positions" and that Railserve was "well connected to members of various railroad associations and groups." *Id*.

Even at this early stage, the facts of *Willard* are highly distinguishable from Cando here. Critically, the Eleventh Circuit specifically noted that Fairfield—unlike Cando—did not operate on the tracks of another railroad like Cando does (ALM). 472 F.3d at 819. Likewise, there is no evidence that the entity in *Willard* ever filed any documents with the STB or required FRA certifications because workers—unlike Cando here—never operated on other common carrier tracks or crossed public roads. Also, the entity in Willard had been specifically organized as a legal entity to only operate within the steel mill and, in fact, had been separated from a different common carrier so that it would not have to operate on the tracks of common carriers. *Id*. at

10

820-22. The Eleventh Circuit also noted that an important aspect of this new entity was that it did not operate on the tracks of common carrier.

Without the benefit of discovery, Greenwood has already established several facts that distinguish it from *Willard*:

- Cando operates on the tracks and mainline of another common carrier (ALM) and crosses public roads;

- Cando does not distinguish between its Crossett County Arkansas operations from other portions of its business across the United State and Canada, they are organized as one business and share policies, management, and manuals;

- Cando shares employees across state lines, including decedent;

- Cando agreement and assumed operations for over 21.8 miles "line of railroad," which is a "non-exclusive" agreement allowing it to receive and deliver interstate freight from the Arkansas Louisiana Mississippi Railroad, which is indisputably a common carrier by rail.

- Cando publicly holds itself out as a provider of "integrated rail services at more than 45 locations across North America" allowing "industrial shippers to optimize their supply chains *and connect to Class 1 railways…*"

- Cando has made filings with the Surface Transportation Board specific to the facility in Crossett County seeking exemption from 49 U.S.C. § 10502(a), which only applies to "rail carriers" under 49 U.S.C. § 10502(5) ("a person providing common carrier railroad transportation for compensation.").

- Cando's other filings with the STB related are only required where rolling stock is "intended for a use related to interstate commerce." 49 U.S.C. § 11301(a).

- Cando's engineers and conductors are FRA certified to operate within the general rail transportation system, which would not be required for purely "in-plant" operations. 49 C.F.R. § 242.3.

In *Willard,* none of those facts were established when the Court granted the motion for summary judgment. The evidence of Cando's status as a common carrier, even without the benefit of discovery, creates a dispute of material fact precluding summary judgment.

Regardless, the Court should not grant Cando's motion for summary judgment without the benefit of complete discovery. Fed. R. Civ. P. 56(d). For instance, in *Willard*, summary judgment was not granted until over three years of litigation, discovery, and motion practice, including extensions of discovery and consideration of newly discovered evidence. *Willard*, 742 F.3d at 820. To the extent that the Court does not grant remand to state court and considers this motion on the merits, Greenwood should be permitted additional discovery on the common carrier issue.

Greenwood expects to take discovery on the following issues that could establish Cando's status as a common carrier:

- Contracts that exist between Cando and other corporations, persons, and railroads.
- Shipping and receiving records with Cando, Georgia Pacific, ALM, and other entities and non-Georgia Pacific industries at the Crossett facility that receive rail service.
- Cando's policies, management, and employee relationships across its corporate entity.
- The location of other employees and the use of Cando's employees at the Crossett County facility at other locations.

- Cando's insurance from FELA and general liability claims.

- Depositions of managers, fact witnesses, and experts for both Cando and Georgia Pacific.

At a minimum, there is ample discovery that is needed before summary judgment can be considered. This Court is not the proper venue for such discovery or such a decision.

## CONCLUSION

The Court should deny Cando's Motion for Summary Judgment.

Respectfully submitted,

By:     */s/ Nathan L. Karlin*
Nathan L. Karlin, KS# 26392
(admitted pro hac vice)
**POTTROFF & KARLIN, LLC**
320 Sunset Avenue.
Manhattan, KS 66502
T: 785-539-4656
F: 785-539-1750
nathan@pottroff.com

Melody H. Piazza, AR# 86108
**TRAMMELL PIAZZA LAW FIRM, PLLC**
1501 North University, Suite 350
Little Rock, Arkansas 72207
501-371-9903
501-371-9905 (Fax)
melody@trammellpiazza.com

## CERTIFICATE OF SERVICE

I, hereby certify that on June 17, 2022, a true and correct copy of the foregoing pleading was filed with the Clerk of the Court through the CM/ECF electronic filing system, which will send electronic notification to all counsel of record.

*/s/ Nathan L. Karlin*

Nathan L. Karlin

14